UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN C. BALLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1166 (RWR) |
| ) | |
| CAROL HOLINKA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter is before the Court on defendants' Motion to Dismiss or, in the Alternative, to Transfer. For the reasons stated below, the Court will dismiss some claims and transfer the remaining claims to the United States District Court for the District of Minnesota.

I.   BACKGROUND

At all times relevant to the complaint, plaintiff was incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca") and defendant Carol Holinka ("Holinka") was its Warden.[1]

*A.  July 2006 Issue of American Curves*

Bureau of Prisons ("BOP") Program Statement 5266.10, Incoming Publications (1/10/2003), permits a warden to block certain material from being delivered to an inmate. It provides:

---

[1] According to the Federal Bureau of Prisons' Inmate Locator, plaintiff currently is incarcerated at a community corrections facility in Kansas City, Kansas.

1

> The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity. The Warden may not reject a publication solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant. Publications which may be rejected by a Warden include but are not limited to publications which [include] sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.

*Id.*, Sec. 6.b.(7). Only the Warden or Acting Warden may reject an incoming publication. *Id.* If the Warden rejects a publication, she "shall promptly advise the inmate in writing of the decision and the reasons for it [and] [t]he notice must contain reference to the specific article(s) or material(s) considered objectionable." *Id.*, Sec. 6.d. In addition, BOP is subject to the Ensign Amendment, which provides:

> None of the funds made available . . . to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the Federal Official having authority to obligate or expend such funds that such information or material is sexually explicit or <u>features nudity</u>.

*Id.*, Sec. 7 (emphasis added).[2] In this circumstance, either the Warden or designated Mail Room staff "shall return the information or material to the publisher or sender." *Id.*, Sec. 7.a. The inmate to whom the material is sent is "notified via use of the Notification to Inmate of Return of Publication or Materials." *Id.*, Sec. 7.a.(8). The material is returned to the publisher, and the inmate may not review the material even for the purpose of filing an inmate grievance. *See id.*, Sec. 7.a.(7), (9). For purposes of the Ensign Amendment, the term "nudity" means "a pictorial

---

[2] "[T]he Ensign Amendment . . . was originally enacted as part of the Omnibus Consolidated Appropriations Act of 1997. *See* Pub. L. No. 104-208, § 614, 110 Stat. 3009 (1996). The amendment . . . has been reenacted in each subsequent appropriations act and is now codified at 28 U.S.C. § 530C(b)(6)[.]" *Ramirez v. Pugh*, 486 F. Supp. 2d 421, 424 (M.D. Pa. 2007) (footnote omitted), *appeal dismissed*, 273 Fed. Appx. 159 (3d Cir. Apr. 8, 2008).

depiction where genitalia or female breasts are exposed." *Id.*, Sec. 7.b.(2). Information or material "features" nudity if it:

> contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

*Id.*, Sec. 7.b.(3).[3] "Sports magazine swimsuit issues" are "examples of commercial publications which . . . may be distributed to inmates even though they may contain nudity because the publication[s] do[] not **feature** nudity." *Id.*, Sec. 7.b.(3). (emphasis in original). However, "[a]ny publication may change a single issue . . . at any time which would allow it to become . . . non-acceptable for distribution." *Id.*

On or about June 27, 2006, plaintiff received a notice that his July 2006 issue of American Curves magazine was rejected and returned to the publisher on the ground that the BOP cannot use appropriated funds to distribute a magazine which features nudity. *See* Complaint ("Compl.") ¶¶ 4-6 & Ex. A (Notification to Inmate of Return of Publication or Materials) (exhibit designation by the Court).[4] Plaintiff promptly availed himself of the Administrative Remedy Program by filing a grievance to "appeal[] the rejection of [the] July 2006 issue of American Curves." *Id.*, Ex. B (Informal Resolution Attempt). His request was

---

[3] The definitions of the terms "nudity" and "features" are identical to those set forth in 28 C.F.R. § 540.72(b)(2), (3), the regulation implementing 28 U.S.C. § 530C(b)(6). Under 28 U.S.C. § 530C(b)(6), no "funds available to the Attorney General for the Federal Prison System may be used . . . to distribute or make available to a prisoner any commercially published information or material that is sexually explicit or features nudity."

[4] Plaintiff's complaint includes a three-page preprinted form to which he attached a statement in six typewritten pages numbered 1-6. In the typewritten statement, plaintiff sets forth his allegations in sequentially numbered paragraphs. References to the Complaint in this Memorandum Opinion are references to the typewritten six-page statement.

3

denied at each stage. *See id.*¶¶ 22-25 & Ex. D (Warden Holinka's September 15, 2006 Administrative Remedy Response), Ex. F (October 27, 2006 Response to Regional Administrative Remedy Appeal) & Ex. H (January 27, 2007 Response by the Administrator of National Inmate Appeals).

According to plaintiff, the July 2006 issue of American Curves "is a sports magazine swimsuit issue," Compl. ¶ 13, which "does not contain depictions of nudity or sexually explicit conduct on a routine or regular basis." *Id.* ¶ 11. He asserts that American Curves does not "feature nudity" as these terms are defined in Program Statement 5266.10, such that defendants "acted with malice or reckless disregard for Plaintiff Ballard's First Amendment rights" in rejecting the July 2006 issue. *Id.* ¶ 36. In the alternative, plaintiff asserts that Program Statement 5266.10 is void for vagueness because it does not define the phrase "routine or regular basis." *Id.* ¶¶ 37-39.

### B. Limits on the Purchase of Stamps

BOP Program Statement P4500.05, Trust Fund/Deposit Fund Manual (1/22/2007) provides that:

> Ordinarily, the Commissary shall sell no more than 60 postage stamps (for first-class, domestic, one-ounce mailing), or the equivalent per Commissary visit. An exception may be made where visits are limited to one per week or less, in which case, the Associate Warden may authorize additional purchases of stamps.

*Id.*, Ch. 3, Sec. 3.4 f.(4) (emphasis added) (listing postage stamps among categories and examples of products approved for sale in BOP commissaries).

According to plaintiff, the Warden "instituted a policy [at] FCI Waseca limiting inmate stamp purchases to 20 first-class stamps per week, although an inmate is allowed to possess 60

first-class stamps." Compl. ¶ 40. As a result of the policy, plaintiff alleges that he "was unable to mail letters." *Id.* ¶ 41. He challenges the Warden's policy on the ground that it is "arbitrary and capricious." *Id.* ¶ 43.

Plaintiff availed himself of the Administrative Remedy Program by filing a grievance. *See* Compl., Ex. I (March 1, 2006 Request for Administrative Remedy). His request was denied at each stage. *Id.*, Ex. J (Warden Holinka's April 5, 2006 Administrative Remedy Response), Ex. L (June 2, 2006 Response to Regional Administrative Remedy Appeal) & Ex. N (August 23, 2006 Response by the Administrator of National Inmate Appeals). Because inmates have "the proclivity . . . to hoard postage stamps and use such as currency," the BOP "established a limit of 20 postage stamps per commissary visit," a number deemed "reasonable and sufficient to meet the social correspondence needs of the overwhelming majority of the inmate population." *Id.*, Ex. N.

Plaintiff brings this action *pro se* under 42 U.S.C. § 1983 against Warden Holinka, Harrell Watts, the Administrator of National Inmate Appeals, and Harley Lappin, BOP's Director, in both their official and individual capacities, *see* Compl. (caption), for their alleged violations of his First Amendment rights, and under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. *See id.* at 3. He demands a declaratory judgment, compensatory and punitive damages plus costs, and injunctive relief. *Id.* Defendants move to dismiss the complaint, alleging among other things, a lack of subject matter and personal jurisdiction, and failure to state a claim upon which relief can be granted. They seek in the alternative to transfer venue.

## II.  DISCUSSION

*A.  Claims Against Defendants Holinka, Watts and Lappin in their Individual Capacities*

    1.  <u>This Court Lacks Personal Jurisdiction Over Defendant Holinka</u>[5]

It is plaintiff's burden to make a *prima facie* showing that the Court has personal jurisdiction over the defendants.  *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).  "Plaintiff must allege specific facts on which personal jurisdiction can be based; [he] cannot rely on conclusory allegations."  *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (citations omitted).

"A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."  D.C. Code § 13-422.  Here, plaintiff identifies Holinka as the Warden at FCI Waseca.  *See* Compl. ¶¶ 19, 23 & Ex. D.  Plaintiff does not allege that she either resides within or maintains a principal place of business in the District of Columbia.

In this situation, the Court engages in a two-part inquiry to determine whether it may exercise personal jurisdiction over Holinka, a non-resident defendant.  First, the Court must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute.  *See GTE New Media Servs., Inc. v. Bell South Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  Second, the Court must determine whether the exercise of personal jurisdiction satisfies due process requirements.  *Id.* (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir.

---

    [5]    The Court presumes without deciding that service of process on Holinka in her individual capacity was effected properly.

1995)). This portion of the analysis turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). These minimum contacts must arise from "some act by which the defendant purposefully avails [herself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In other words, "the defendant's conduct and connection with the forum State are such that [she] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The District of Columbia long-arm statute allows a court in the District of Columbia to exercise personal jurisdiction over a non-resident defendant with regard to a claim arising from the defendant's conduct in:

> (1) transacting business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a).[6]

---

[6] The alternative bases set forth under the long-arm statute are inapplicable.

Plaintiff argues that this Court may exercise personal jurisdiction over Holinka because she "is located at an outpost that responds to the directives issued from the Washington offices" of the BOP. Plaintiff's Response to Motion to Dismiss and Transfer ("Pl.'s Opp'n") at 3. Such assertions alone are not sufficient. *Cf. FC Inv. Group LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007) (concluding that "defendant's 'regular' phone calls into the District of Columbia from elsewhere do not constitute 'transacting business' in the District of Columbia"), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008).

Plaintiff does not allege specific facts showing that Holinka transacts any business or contracts to supply services in the District of Columbia. Although persistent conduct undertaken in a person's individual capacity may constitute transacting business for purposes of the D.C. long-arm statute, *see Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990), the complaint sets forth no allegations that Holinka has any personal connection with the District of Columbia other than her federal employment. The mere fact that Holinka is an employee of the BOP, which is headquartered in this district, does not render her subject to suit in her individual capacity in the District of Columbia. *Pollack v. Meese*, 737 F. Supp. at 666 (concluding that the court had no basis for asserting personal jurisdiction over a BOP Warden "whose office is in Springfield, Missouri" because he "surely does not transact any business in the District of Columbia"); *see Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002) (dismissing claims of District of Columbia offender housed under contract in a Virginia facility against Virginia officials in their individual capacities over whom this district court lacked personal jurisdiction).

Plaintiff is no more successful in establishing that Holinka caused any tortious injury in the District of Columbia. The actual injuries of which plaintiff complains occurred in Minnesota

while he was incarcerated at FCI Waseca. Regardless of whether this defendant acted in or outside of the District of Columbia, plaintiff suffered no injury here. The Complaint is devoid of factual allegations supporting the exercise of personal jurisdiction over her based on her purposeful or repeated contacts with this forum, and there is no showing that Holinka could reasonably anticipate being haled into court here. For these reasons, the Court concludes that it lacks personal jurisdiction over Holinka. However, since this case will be transferred to a district where personal jurisdiction over Holinka can be exercised, as is discussed below, Holinka will not be dismissed as a defendant at this stage.

    2. <u>Defendant Lappin Cannot Be Held Liable Under a Respondeat Superior Theory</u>

    The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. __, __, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Phillip Morris, Inc.,* 116 F. Supp. 2d 131, 135 (D.D.C. 2001). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65. Thus, the complaint's "[f]actual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (citations omitted).

The Court construes plaintiff's claims against Lappin in his individual capacity as claims brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "A *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983."[7] *Marshall v. Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 193 (D.D.C. 2007) (citing *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (internal citation omitted)). Under *Bivens*, a plaintiff has "an implied private action for damages against federal officers alleged to have violated [his] constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Critical to a *Bivens* claim is an allegation "that the defendant federal official was personally involved in the illegal conduct." *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997).

According to plaintiff, Lappin "enforced[] or acquiesced in the . . . rejection of the July 2006 issue of <u>American Curves</u>," Compl. ¶ 21, and thus was a participant in the "causal chain" of events giving rise to his cause of action. Pl.'s Opp'n at 3. Plaintiff has neither pled nor shown that Lappin himself took part in rejecting the magazine or otherwise directly caused plaintiff injury. In his capacity as Director of the BOP, Lappin has supervisory and oversight responsibility for the agency's activities. To the extent that the plaintiff's theory of the case is to hold Lappin liable for the unconstitutional acts of his subordinates Watts and Holinka, plaintiff

---

[7] "To state a claim under [42 U.S.C. §] 1983, a plaintiff must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted 'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir.1991).

cannot prevail. Lappin's supervisory role as the BOP's Director does not render him personally liable for the alleged wrongful acts of the BOP's employees. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that *respondeat superior* liability cannot form the basis of liability for a § 1983 claim); *see also Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993) (concluding that a complaint naming the Attorney General and the BOP Director as defendants based on theory of *respondeat superior*, without allegations specifying their involvement in the case, does not state a claim against them under *Bivens*); *Epps v. United States Attorney General*, 575 F. Supp. 2d 232, 239 (D.D.C. Sept. 8, 2008) (citing *Marshall v. Reno*, 915 F. Supp. 426, 429-30 (D.D.C. 1996)) ("A superior official cannot be held liable under Section 1983 or *Bivens* for the constitutional torts of employees under him or her; the common law theory of respondeat superior does not pertain to the federal government in this context.").

### 3. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Under this doctrine of qualified immunity, a government official can be held liable only if his conduct violates a constitutional right and if it would be clear to a reasonable official that his conduct was unlawful in the situation at issue. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). An official protected by qualified immunity enjoys "*immunity from suit* rather than a mere defense to liability," which is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

11

Defendant Watts' involvement came about only because, in his capacity as the National Inmate Appeals Administrator, he rejected plaintiff's final Administrative Remedy Program appeal to BOP's Central Office. *See* Compl., Ex. H, K. Federal district courts have determined that Watts is protected by qualified immunity where the *Bivens* claims against him arise from decisions he has rendered on grievance appeals. *See Patel v. Warren*, No. 7-CA-760, 2007 WL 2818056, at *8 (W.D. Tex. Sept. 26, 2007) (concluding that qualified immunity bars suit against Watts based on plaintiff's dissatisfaction with his response to administrative grievance because prisoners "do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so") (citation omitted); *Hodge v. United States*, No. 06cv1622, 2007 WL 2571938, at *13 (M.D. Pa. Aug. 31, 2007) (adopting magistrate judge's recommendation to dismiss *Bivens* claim against Watts because "prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action"); *accord Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008). The Court concludes that Watts is protected by qualified immunity and that plaintiff's claims for damages against him are barred for failure to state a claim upon which relief can be granted.

    *B. Claims Against Defendants Holinka, Watts and Lappin in their Official Capacities*

Plaintiff brings this action against Holinka, Watts and Lappin in their official capacities as well. "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473

U.S. 159, 165-66 (1985). Accordingly, the Court treats these claims as if they were brought against the United States directly.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). The United States has not waived its sovereign immunity for constitutional tort claims. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477 (1994) (stating that sovereign immunity precludes damage claims against the United States government for constitutional violations brought under the Federal Tort Claims Act). In addition, sovereign immunity extends to governmental agencies such as the BOP and to their employees where such employees are sued in their official capacities. *See id.* at 483-86. "Sovereign immunity is jurisdictional in nature," *id.* at 475, and absent a waiver of sovereign immunity, the court lacks subject matter jurisdiction to entertain plaintiff's claims for money damages against the BOP or against the federal government officials sued in their official capacities here. *See id.*; *Clark v. Library of Congress*, 750 F.2d 89, 101-02 (D.C. Cir. 1984); *Meyer v. Reno*, 911 F. Supp. 11, 18 (D.D.C. 1996). However, it appears that plaintiff's claim under the Administrative Procedure Act survives this motion to dismiss because the statute waives sovereign immunity to the extent that declaratory judgment or other equitable relief may be available. *See* 5 U.S.C. § 702 (authorizing "relief other than money damages" to a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action").

*C. Transfer to the District of Minnesota*

Defendants move to dismiss on the ground that venue in this district is improper. *See* Defs.' Mot. at 9-10. In the alternative, defendants move to transfer this action to the United States District Court for the District of Minnesota. *See id.* at 10. Plaintiff maintains that this action should proceed in this district principally because the BOP's Central Office is located in the District of Columbia. *See* Pl.'s Opp'n at 5. In addition, he states that Lappin and Watts perform their duties here. *Id.* Although Holinka neither resides nor conducts business in this district, plaintiff asserts that she "is located at an outpost" of the BOP and, therefore, "responds to the directives issued from the Washington offices." *Id.* Lastly, because plaintiff pursued his Administrative Remedy Program grievances to their final stage, an appeal to the National Inmate Appeals Administrator, he argues that it is in the District of Columbia that "his relief was denied once and for all, and his need for relief through the courts began." *Id.*

"Courts in this jurisdiction must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d at 256. In a civil action where the Court's jurisdiction is not based solely on diversity of citizenship, such as this case, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). Venue is not proper in this district under any of the provisions of 28 U.S.C. § 1391(b): defendants do not all reside in the District of Columbia, no substantial part of the events giving rise to plaintiff's claim took place here, and

14

this is not a case in which no other district is available. Rather, a substantial part of the events giving rise both to plaintiff's First Amendment claim and his Administrative Procedure Act claim occurred in Minnesota while plaintiff was incarcerated at FCI Waseca.

In a case filed in a jurisdiction in which venue is improper, the Court, in the interest of justice, may transfer the action to any other district where it could have been brought. 28 U.S.C. § 1406(a). The decision to transfer an action on this ground is left to the discretion of the Court. *See Novak-Canzeri v. Saud*, 864 F. Supp. 203, 207 (D.D.C. 1993). The Court may transfer an action even though it lacks personal jurisdiction over the defendants. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984). Transfer is appropriate under Section 1406(a) "when procedural obstacles 'impede an expeditious and orderly adjudication . . . on the merits.'" *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)); *Crenshaw v. Antokol*, 287 F. Supp. 2d 37, 45 (D.D.C. 2003) (stating that the "lack of venue should not bar resolution of the plaintiff's claims on the merits," and transferring the case to the district where "venue would be proper and the defendants would be subject to personal jurisdiction"). Such procedural obstacles include "lack of personal jurisdiction, improper venue, and statute of limitation bars." *Sinclair v. Kleindienst*, 711 F.2d at 294.

In the interest of justice, the Court will transfer this action to the United States District Court for the District of Minnesota. *See, e.g., Simpson v. Fed. Bureau of Prisons*, 496 F. Supp. 2d 187, 194 (D.D.C. 2007) (transferring prisoner's civil action brought under *Bivens* and the Federal Tort Claims Act to the district having "personal jurisdiction over the two defendants most involved in the underlying disciplinary proceedings and [where] venue" is proper); *Zakiya*

*v. United States*, 267 F. Supp. 2d 47, 59 (D.D.C. 2003) (transferring case involving challenge to national BOP policy to the district where the "implementation of the national policy occurred"); *Dorman v. Thornburgh*, 740 F. Supp. 875, 879-80 (D.D.C. 1990) (transferring action to the district where the "operatively significant event of the conspiracy to deprive them of their civil rights occurred"). It is in the District of Minnesota where the court may exercise personal jurisdiction, where venue is proper, and where the events giving rise to plaintiff's claims occurred.

An appropriate Order accompanies this Memorandum Opinion

Signed this 27th day of February, 2009.

                                          /s/
                              RICHARD W. ROBERTS
                              United States District Judge